UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDERNESS WATCH; GREAT OLD BROADS FOR WILDERNESS; FRIENDS OF THE CLEARWATER; and FRIENDS OF THE BITTERROOT, <br><br>      Plaintiffs, <br><br> v. <br><br> LINDA JACKSON, Forest Supervisor of the Payette National Forest; MARY FARNSWORTH, Regional Forester for the Intermountain Region; and UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture, <br><br> Defendants and Crossclaim-Defendants, <br><br> v. <br><br> STATE OF IDAHO, by and through the IDAHO TRANSPORTATION BOARD, an agency of the State of Idaho; and the IDAHO FISH AND GAME COMMISSION, an agency of the State of Idaho, <br><br>      Defendants-Intervenors and Crossclaimants. | Case No. 1:23-cv-00295-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

**MEMORANDUM DECISION AND ORDER - 1**

## INTRODUCTION

Before the Court are Plaintiffs' and the Federal Defendants' joint motion to dismiss Plaintiffs' complaint and the Federal Defendants' motion to dismiss the crossclaims of the Defendants-Intervenors ("Idaho"), which Plaintiffs join. (Dkt. 45, 46.) Idaho asserts that its crossclaims, premised on the Federal Defendants' alleged failure to exercise nondiscretionary actions under the Central Idaho Wilderness Act, survive the motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] Idaho objects also to the joint motion to dismiss the complaint on the grounds that the settlement agreement between Plaintiffs and the Federal Defendants violates the Central Idaho Wilderness Act.

The parties have fully briefed the motions and they are ripe for the Court's consideration. The Court conducted a hearing on October 10, 2024, during which all parties appeared and presented oral argument. After careful consideration, and for the reasons discussed below, the Court will grant both motions. The Court concludes it lacks subject matter jurisdiction over Idaho's crossclaims brought pursuant to the Administrative Procedure Act, and therefore will dismiss them pursuant to Fed. R. Civ. P. 12(b)(1).[2] The Court also will overrule Idaho's objection to the settlement agreement, on the grounds that its terms do not violate the Central Idaho Wilderness Act.

---

[1] Idaho asserts claims under the National Environmental Policy Act and the National Forest Management Act as well; these claims are closely related to the claim under the Central Idaho Wilderness Act.
[2] Consequently, the Court will not address the Federal Defendants' alternative arguments in favor of dismissal, including those asserted under Rule 12(b)(6).

**MEMORANDUM DECISION AND ORDER - 2**

**BACKGROUND**

**1.    Procedural Background**

This action concerns four back country airstrips located within the Frank Church-River of No Return Wilderness Area – Simonds, Vines, Mile High (or Mile Hi), and Dewey Moore – commonly referred to as the Big Creek Four. Plaintiffs Wilderness Watch, Great Old Broads for Wilderness, Friends of the Clearwater, and Friends of the Bitterroot challenge actions taken by the Federal Defendants to permit, promote, facilitate and carry out maintenance of these airstrips for private aircraft landings within the Big Creek watershed of the Frank Church-River of No Return Wilderness in Central Idaho. Compl. ¶ 1. (Dkt. 1.) Plaintiffs claim that the Central Idaho Wilderness Act ("CIWA"), under the general provisions of the Wilderness Act of 1964, forbids aircraft landings within the Frank Church Wilderness, with only narrow, specific exceptions. *Id*. ¶ 2. Plaintiffs allege that the Forest Service has acted contrary to the directives of the Wilderness Act and the CIWA by allowing frequent private aircraft landings at the Big Creek Four. Plaintiffs further allege that aviation groups and State of Idaho agencies promote and use remote backcountry landing destinations in the Big Creek drainage for motorized recreation and for wolf hunting efforts, in violation of the CIWA.

Plaintiffs seek declaratory and injunctive relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq*.; the National Forest Management Act (NFMA), 16 U.S.C. § 1600 *et seq*.; the Wilderness Act, 16 U.S.C. § 1131 *et seq*.; and the CIWA, P.L.

96-312. They seek to restrict aircraft landings at the Big Creek Four to emergency use only.

The State of Idaho moved to intervene in this lawsuit, as did the Idaho Aviation Association, the Idaho Recreation Council, and backcountry pilot Mike Dorris. (Dkt. 8, 16.) Neither Plaintiffs nor the Federal Defendants opposed Idaho's motion, and the Court granted Idaho's motion to intervene as a matter of right on November 20, 2023. (Dkt. 30.) The Court denied the private parties' motion to intervene, but later allowed their filing of an amicus brief. (Dkt. 34, 35.)

Idaho filed an answer and a crossclaim against the Federal Defendants on March 29, 2024. (Dkt. 39.) Idaho asserts that restriction of aircraft landings at the Big Creek Four to emergency use only will result in de facto closure of the airstrips without Idaho's consent, in contravention of the CIWA. Idaho contends that the Big Creek Four "have been safely used for more than half a century," including by the United States Postal Service, the Forest Service, and private entities. Crossclaim ¶ 152. (Dkt. 39.) Idaho insists that the Forest Service's 2003 Wilderness Management Plan, which includes a 2003 Record of Decision ("2003 ROD") and the 2009 Errata to the 2003 ROD,[3] as well as related documents (referred to in their entirety as the "2003/2009 Plan"),[4] require the

---

[3] Idaho cited to both documents in its crossclaim. *See* Record of Decision, Final Environmental Impact Statement for the Frank Church-River of No Return Wilderness Revised Wilderness Management Plan, https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5300737.pdf; May 21, 2009 Errata, https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5300729.pdf. These documents are part of the 2003/2009 Plan. *See* n.4.

[4] The entirety of the Frank Church-River of No Return Wilderness Plan is available at: https://www.fs.usda.gov/detailfull/scnf/specialplaces/?cid=stelprdb5300653.

**MEMORANDUM DECISION AND ORDER  - 4**

Forest Service to coordinate with Idaho to create and implement maintenance plans for the Big Creek Four.

Idaho also claims that an August 10, 2018 letter issued by the Regional Forester sets forth certain policy directives to develop an O&M plan for the Big Creek Four and that the Forest Service developed management plans in 2022. *See* Nora B. Rasure, Regional Forester, DIRECTION FOR BIG CREEK 4 AIRSTRIPS (DEWEY MOORE, VINES, SIMMONS, AND MILE HIGH), Aug. 10, 2018; Emergency Use Airstrip Management Plan Mile Hi Airstrip; Emergency Use Airstrip Management Plan Simonds Airstrip; Emergency Use Airstrip Management Plan Vines Airstrip; and Emergency Use Airstrip Management Plan Dewey Moore Airstrip (collectively, "2022 Management Plans").[5] Idaho insists that Plaintiffs' complaint and the parties' settlement agreement seek to thwart efforts to maintain the Big Creek Four according to the 2022 Management Plans.

Idaho's claims against the Federal Defendants all relate, in one way or another, to the CIWA. They are premised on Idaho's objection to the designation of the Big Creek Four for emergency use only, and Idaho's claim that maintenance of the airstrips by the Forest Service is nondiscretionary. Count I alleges a direct violation of the CIWA, due to the Forest Service's ongoing designation of the Big Creek Four for "emergency use only," and its discouragement of public use of the airstrips. Idaho contends that the Forest Service's actions contravene nondiscretionary duties imposed by the CIWA to maintain

---

[5] At the time the motions before the Court were fully briefed, Idaho had not included a copy of either the 2018 Regional Forester's Statement or the 2022 Management Plans in the record, despite reliance on both documents in their crossclaim and in opposition to the Federal Defendants' motion to dismiss. At the hearing, the Court requested that the parties supplement the record. The documents are in the record at Docket 54.

**MEMORANDUM DECISION AND ORDER - 5**

the Big Creek Four such that the airstrips are open for public use and serviceable for aviation. Idaho seeks declaratory and injunctive relief to prevent the airstrips from being closed or rendered unserviceable, as Idaho has not consented to their closure.

Count II alleges a violation of NEPA. Idaho insists that maintenance activities to support the serviceability of the Big Creek Four are nondiscretionary actions exempt from NEPA, meaning that the Forest Service must take specific actions regardless of environmental impacts without satisfying the NEPA review process. In other words, Idaho claims that maintenance of the Big Creek Four is mandated by the CIWA, with no room for agency discretion. Idaho seeks contradictory relief – a declaration that NEPA does not apply, or alternatively, an order compelling the Forest Service to issue a categorical exclusion pursuant to NEPA that encompasses maintenance activities at the Big Creek Four.

Count III alleges a violation of NFMA. Idaho maintains that the 2003/2009 Plan restricts the Forest Service's use of the Big Creek Four to emergency use only, but permits the flying public and Idaho officials to land aircraft at the Big Creek Four in non-emergent situations. Idaho requests declaratory and injunctive relief, in the form of an order that the 2022 Management Plans are nondiscretionary actions required under the CIWA which the Forest Service must execute.

On June 10, 2024, Plaintiffs and the Federal Defendants jointly moved for dismissal of Plaintiffs' complaint, explaining they had reached a settlement. (Dkt. 45.) The settlement agreement, for which Plaintiffs and the Federal Defendants seek a consent judgment from the Court, contains the following provisions:

**MEMORANDUM DECISION AND ORDER - 6**

1.  The Regional Forester will issue a new statement regarding the Big Creek Four Airstrips within sixty (60) days of the Effective Date of this Agreement. The new statement will supersede the Regional Forester's August 10, 2018 "Direction for Big Creek 4 Airstrips" and will specifically clarify that Big Creek Four airstrips are for emergency use only and are not managed as public use landing areas under the current Frank Church-River of No Return Wilderness Management Plan (hereafter the "Management Plan").

2.  Pursuant to the Regional Forester's statement above, and within sixty (60) days of receipt of such statement, the Payette National Forest will issue a public notice on its website clearly and specifically identifying the eight airstrips open for public use within the Frank Church-River of No Return Wilderness. The notice will specifically inform the public that Big Creek Four airstrips are for emergency use only and are not managed as public use landing areas under the current Management Plan.

3.  The Payette National Forest will prepare appropriate documentation consistent with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq*.; the Central Idaho Wilderness Act, Pub. L. No. 96-312, 94 Stat. 948 (1980); the Wilderness Act, 16 U.S.C. § 1131 *et seq*.; and the Management Plan prior to conducting any maintenance on the Big Creek Four airstrips. At least thirty (30) days prior to the commencement of any maintenance activities on the Big Creek Four airstrips, the Forest Service will provide public notice of its authorization of maintenance and release to the public the above-described documentation. The Plaintiffs and the Forest Service agree and acknowledge that the removal of hazards and obstructions such as rocks, branches, or fallen trees from an airstrip does not amount to maintenance under this Agreement. The requirement to provide public notice and release documentation to the public at least thirty (30) days prior to maintenance expires five (5) years after the Effective Date.

4.  In 2024, the Payette National Forest will initiate monitoring at the Big Creek Four airstrips to assess the aircraft use occurring at these airstrips. This monitoring may include data collected through options such as remote trail cameras, traffic counters, and/or other methodologies or technology to capture seasonal activity at the airstrips. The Forest Service will monitor for five years, and a summary of the data collected will be publicly available annually for the five years following Effective Date.

(Dkt. 45-1.)

At the same time, the Federal Defendants filed a motion to dismiss Idaho's crossclaims. (Dkt. 46.) The Federal Defendants argue that Idaho's crossclaims are subject to dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Idaho opposes the dismissal of its crossclaims, and objects to the terms of the settlement agreement.

## 2.    The Frank Church-River of No Return Wilderness Plan

The 1964 Wilderness Act set aside federal lands as "wilderness areas" that would be "untrammeled by man, where man himself is a visitor who does not remain." 16 U.S.C. § 1131(c). Under the Act, Congress was empowered to establish a national wilderness preservation system composed of federally owned areas designated for inclusion. The Wilderness Act prohibits the landing of aircraft in any designated wilderness area, "[e]xcept as specifically provided for" by the Act. 16 U.S.C. § 1133(c). The Act allows the use of aircraft within designated wilderness areas "where these uses have already become established," and the use of aircraft may be "permitted to continue subject to such restrictions as the Secretary of Agriculture deems desirable." 16 U.S.C. § 1133(d)(1).

In 1980, Congress created the Frank Church-River of No Return Wilderness area, spanning 2.4 million acres, the largest forested wilderness in the lower 48 states. The enabling legislation—the Central Idaho Wilderness Act—provides that this area will be governed by the Wilderness Act. Central Idaho Wilderness Act ("CIWA"), Pub. L. No. 96-312, 94 Stat. 948 (1980); *Wolf Recovery Found. v. U.S. Forest Serv.*, 692 F. Supp. 2d 1264, 1266 (D. Idaho 2010).

**MEMORANDUM DECISION AND ORDER  - 8**

The CIWA provides that, within the Frank Church-River of No Return Wilderness and the Selway–Bitterroot Wilderness additions designated by the Act:

> [T]the landing of aircraft, where this use has become established prior to the date of enactment of this Act shall be permitted to continue subject to such restrictions as the Secretary deems desirable: Provided, that the Secretary shall not permanently close or render unserviceable any aircraft landing strip in regular use on national forest lands on the date of enactment of this Act for reasons other than extreme danger to aircraft, and in any case not without the express written concurrence of the agency of the State of Idaho charged with evaluating the safety of backcountry airstrips.

CIWA, Pub. L. No. 96-312, 94 Stat. 948 § 7 (1980).

In 2003, the Forest Service prepared a Final Environmental Impact Statement for the Frank Church-River of No Return Wilderness Revised Wilderness Management Plan. 2003 ROD.[6] The management of the Big Creek Four was one of four main topics under NEPA review. The 2003 ROD describes the Forest Service's decision to approve the Revised Wilderness Management Plan for the Frank Church-River of No Return Wilderness, and explains why the agency made the choice it did.

The 2003 ROD sets forth that the Big Creek Four will be "maintained for emergency use only; public use of these airstrips will be discouraged. This decision changes current management direction, which did not provide for any maintenance of

---

[6] *Available at* https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5300737.pdf. *See* note 3, supra.

**MEMORANDUM DECISION AND ORDER  - 9**

these airstrips." 2003 ROD at 4.[7] The Forest Service indicated that it would notify the

appropriate Idaho state agencies of the emergency use only status of the Big Creek Four

and would collaborate with these agencies for providing maintenance for such emergency

use. *Id.* The Forest Service acknowledged that the decision to designate the Big Creek

Four for emergency use only was chosen in recognition of the CIWA and the Wilderness

Act, because "permanent closure of [the Big Creek Four] requires written concurrence

from the State of Idaho; to date the state has not concurred." *Id.* at 6, 13.[8]

The resulting 2003/2009 Plan specified that airstrip management for the Big Creek

Four will "continue to be consistent with use for emergencies only." 2003/2009 Plan,

May 21, 2009 Errata.[9] The 2003/2009 Plan provided that the Forest Service, in

consultation with the State of Idaho and the Federal Aviation Administration, "will define

an appropriate maintenance standard for the four emergency use only airstrips along Big

Creek, with the understanding that conditions will not be enhanced at these locations over

---

[7] Public comment received during scoping revealed that aviators believed "that the landing strips are not adequately maintained by the Forest Service to provide for landings under emergency conditions. In addition, aviators would like these landing strips to be maintained for public use rather than as emergency use only." 2003 ROD at 8. In response to these comments, the Forest Service indicated that the four airstrips "do not meet standards for regular operation by the State of Idaho or the Forest Service. We have determined [the Big Creek Four] are unsafe for all but the most proficient pilots with aircraft suited to such backcountry use…It is also our determination that the [CIWA] constrains 'improving' these landing strips beyond their dimensions and conditions when they were acquired in 1980." 2003 ROD at 13.
[8] Public comments received during scoping encouraged the Forest Service to close the Big Creek Four, given the presence of alternative landing strips in the area open to the public. 2003 ROD at 13. It is not clear from the record whether prior attempts had been made to close the Big Creek Four. Regardless, any action prior to 2003 is not relevant here. The Forest Service determined that the selected action would allow the Big Creek Four to remain serviceable and maintained consistent with NEPA and the CIWA.
[9] The 2009 Errata to the Wilderness Plan clarified Plan contents but did not change any decisions. May 21, 2009 Errata, available at: https://www.fs.usda.gov/detail/scnf/landmanagement/planning/?cid=STELPRDB5300653, click on Cover Letter (Dated May 21, 2009). The 2009 Errata removed the definition of "emergency use only" contained in the Glossary to the Management Plan at page L-5. This was done to "address liability issues."

**MEMORANDUM DECISION AND ORDER - 10**

what existed in 1980." 2003/2009 Plan at 2-11.[10] The Big Creek Four would not be included on wilderness maps. *Id.* at 2-12, E. Standards and Guidelines, 3.

On August 10, 2018, the Regional Forester published a statement that, consistent with the 2003/2009 Plan, the Forest Service would continue to communicate to the aviation community that the Big Creek Four are restricted to emergency use. (Dkt. 54-1 at 3.) The Forest Service adopted a policy that it would not issue citations for any pilot that utilized the Big Creek Four for non-emergency use, "since the airstrips are not closed." However, each time non-emergency use occurred, the District Ranger was to notify the public that general public use was discouraged because the Big Creek Four were not managed for anything other than emergency use.

The Regional Forester's 2018 statement also set forth the Forest Service's commitment to developing an O&M plan to identify maintenance needs and the hazardous conditions at the Big Creek Four. The maintenance plans would be consistent with the Wilderness Act, and the objective would be to maintain the airstrip dimensions, conditions and functions to those existing in 1980 at the time of wilderness designation. Such maintenance would consist of removing downed trees or large rocks, filling large rodent holes, cutting trees that have grown into the approach or departure routes creating a hazard for pilots needing to land in an emergency, and cutting seedlings and shrubs from the airstrip surface. The Forest Service indicated it would collaborate with the

---

[10] Available at:
https://www.fs.usda.gov/detail/scnf/landmanagement/planning/?cid=STELPRDB5300653, Management Plan Documents, Chapter 2 (revised with May 22, 2009 Errata).

Division of Aeronautics, Idaho Department of Fish & Game, and members of the Idaho Airstrip Network to accomplish the appropriate maintenance. (Dkt. 54-1 at 4.)[11]

In 2022, the Forest Service published its Emergency Use Airstrip Management Plans for the Big Creek Four. (Dkt. 54-2, 54-3, 54-4, 54-5.) The Forest Service reiterated that the Big Creek Four were for "emergency use only, public use of [these] airstrip[s] is discouraged due to potential safety hazards and emergency use classification." (Dkt. 54-2 at 7; 54-3 at 6; 54-4 at 7; 54-5 at 6.) Maintenance of the airstrips would be by non-mechanized and non-motorized means and would provide for vegetation control; clearing of obstructions (fallen logs, rolled rocks); rodent control (eliminate holes within the runway surface); weed control; and monitoring. (Dkt. 54-2 at 8; 54-3 at 7; 54-4 at 8; 54-5 at 7.)

The proposed settlement agreement requires the Forest Service to issue a new statement regarding the Big Creek Four that would supersede the 2018 Regional Forester's Statement, and would reiterate that the Big Creek Four are for emergency use only. Maintenance activities beyond the clearing of hazards and obstructions such as rocks, branches or fallen trees would require the Forest Service to prepare appropriate documentation consistent with NEPA, the CIWA, the Wilderness Act, and the 2003/2009 Plan. (Dkt. 45-1 at 2.)

---

[11] The 2003/2009 Plan also set forth management plan objectives. 2003/2009 Plan, Chapter 2, D. Objectives ¶ 9, p. 11. Available at:
https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/stelprdb5300747.pdf

**MEMORANDUM DECISION AND ORDER - 12**

## LEGAL STANDARDS

**1.      Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction only as expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court properly dismisses a case for lack of subject matter jurisdiction when it lacks the "statutory or constitutional power to adjudicate the case." *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010)). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). Accordingly, the claimant bears the burden of proof that jurisdiction does in fact exist. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). In ruling on a Rule 12(b)(1) motion, the Court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and

the Court's resolution of disputed facts. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[12]

The Federal Defendants mount a factual attack to Idaho's crossclaim, asking the Court to review the 2003/2009 Plan. Idaho, in turn, relies upon the 2018 Regional Forester Statement and 2022 Management Plans referenced in its crossclaim. Response at 14 n.8. (Dkt. 47.) Accordingly, the Court will look beyond the allegations in Idaho's crossclaim in determining whether it possesses jurisdiction. *Bowen v. Energizer Holdings, Inc.*, No. 23-55116, 2024 WL 4352496, at *4 (9th Cir. Oct. 1, 2024).

## 2.    The Administrative Procedure Act

Idaho sues the Federal Defendants for violations of the CIWA, NEPA, and NFMA pursuant to the APA, 5 U.S.C. § 702 and 706. (Dkt. 39.) *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006) (The APA provides the authority for judicial review of agency decisions under NFMA and NEPA, as neither statute provides a private right of action); *Wolf Recovery Found. v. U.S. Forest Serv.*, 692 F. Supp. 2d 1264, 1267 (D. Idaho 2010) (suit challenging actions of the Forest Service under the Wilderness Act brought pursuant to the APA); *High Sierra Hikers Ass'n v. U.S. Forest Serv.*, 436 F. Supp. 2d 1117, 1150 (E.D. Cal. 2006) (suit seeking declaratory relief under the APA for

---

[12] "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The Court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)—it accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor, and then determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). A "factual" attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Safe Air for Everyone*, 373 F.3d at 1039. *See also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (The court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction.).

violations of the Wilderness Act); *Wilderness Watch v. U.S. Forest Serv.*, 143 F. Supp. 2d 1186, 1204 (D. Mont. 2000) (applying Section 706 to determine whether permanent resort lodges are permitted under the Wild and Scenic Rivers Act and the CIWA).[13]

There are two components to Section 702. The first sentence authorizes a suit against the government by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The second sentence states: "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States…." *Id.* Section 702 thus nestles a broad waiver of sovereign immunity (the second sentence) within an "omnibus judicial-review provision, which permits suit for violations of numerous statutes…that do not themselves include causes of action for judicial review." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1168 (9th Cir. 2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014)).

A plaintiff may challenge either an agency's affirmative act under Section 704, or an agency's failure to act under Section 706. Under Section 704, the "agency action" complained of must be "final agency action." 5 U.S.C. § 704. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). To constitute "final agency action," two

---

[13] Idaho acknowledges that the CIWA does not provide a private right of action. Idaho's Response at 12 – 13. (Dkt. 47.) Notably, at the hearing, Idaho reaffirmed it brings its crossclaim pursuant to the APA.

conditions must be met: (1) "the action must mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature"; and, (2) "the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). The Court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Section 706 of the APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed…." 5 U.S.C. § 706(1). A claim under Section 706(1) can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *S. Utah Wilderness All.*, 542 U.S. at 64. This limitation "rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65. Even when the Court may compel an agency to act, the Court has no power to specify what the action must be. *Id*. at 65 (explaining that a court could impose a judicial decree under the APA requiring an agency to issue mandatory regulations, but not a judicial decree setting forth the content of those regulations).

The applicable statute of limitations to challenge final agency action under Section 704 is six years. 28 U.S.C. § 2401(a); *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 942–43 (9th Cir. 2006) ("Although the APA itself contains no specific statute of limitations, a general six-year civil action statute of limitation applies

to challenges under the APA.").[14] In contrast, actions brought pursuant to Section 706 are not subject to the six-year filing deadline, because a plaintiff is not complaining about what an agency has done but rather about what the agency has yet to do. *Sims v. Ellis*, 972 F. Supp. 2d 1196, 1203 n.6 (D. Idaho 2013); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999).

The common thread throughout Sections 702, 704 and 706(1) for claims brought pursuant to the APA is the necessary requirement of "agency action," either as the action complained of (in §§ 702 and 704) or as the action to be compelled (in § 706(1)). *S. Utah Wilderness All.*, 542 U.S. at 62. The definition of agency action begins with a list of five categories of decisions made or outcomes implemented by an agency—"agency rule, order, license, sanction [or] relief." 5 U.S.C. § 551(13), *cited in S. Utah Wilderness All.*, 542 U.S. at 62. "All of those categories involve circumscribed, discrete agency actions, as their definitions make clear…." *S. Utah Wilderness All.*, 542 U.S. at 62. *See also Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871 (1990) (plaintiffs must challenge a discrete agency action that is harmful to them for their claim to be ripe.). Agency action includes

---

[14] The United States Supreme Court has "made plain that most time bars are nonjurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015). This is true "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)." *Id.* Thus, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.*; *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (creating rebuttable presumption that statutes of limitations on claims against the government are subject to equitable tolling). An APA claim does not accrue for purposes of § 2401(a)'s 6-year statute of limitations until the plaintiff bringing suit has been injured by final agency action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. ---, 144 S. Ct. 2440, 2460, 219 L. Ed. 2d 1139 (2024). At the hearing, the Federal Defendants explained that they are <u>not</u> relying upon the argument asserted in their brief that the Court lacks jurisdiction over Idaho's crossclaims because Idaho did not bring suit under Section 704 within six years of final agency action. *See* Def.s' Mem. at 5 – 7. (Dkt. 46-1.) The Federal Defendants overlooked *Wong* and *Corner Post* in their briefing, which they acknowledged at the hearing.

also the "failure to act." 5 U.S.C. § 551(13). A failure to act is properly understood as a failure to take one of the enumerated agency actions defined in Section 551(13). *S. Utah Wilderness All.*, 542 U.S. at 62. The only agency action that can be compelled under the APA is action legally required. *Id.* at 63.

In this respect, Idaho fundamentally misreads *Navajo Nation v. Dep't of the Interior,* 876 F.3d 1144 (9th Cir. 2017). Idaho contends that, because it seeks injunctive and declaratory relief, its crossclaim is not limited by Section 704's final agency action requirement, citing *Navajo Nation*. *See* Response at 10 – 14. But, *Navajo Nation* does not support Idaho's contention. Rather, *Navajo Nation* reconciled the seeming inconsistency between the holdings in *Presbyterian Church v. United States*, 870 F.2d 518 (9th Cir. 1989), and *Gallo Cattle Co. v. U.S. Dep't. of Agric.*, 159 F.3d 1194 (9th Cir. 1998), both of which dealt with the question of when sovereign immunity is waived for claims asserted against the government pursuant to Section 702 of the APA.[15] *Navajo Nation* did not eliminate the requirement for a challenge to either agency action or inaction for APA claims.

Because Idaho asserts claims under the APA pursuant to Section 706(1), they must identify agency action – in this case, an agency decision *not* to act. *S. Utah Wilderness*

---

[15] *Presbyterian Church* held that Section 702 did not limit the waiver of sovereign immunity to cases that challenged agency action, while *Gallo Cattle* held that Section 702 contained several limitations, such as the final agency action requirement of Section 704. The Ninth Circuit concluded that, with respect to the issue of sovereign immunity, *Gallo Cattle* was valid for cases dealing with causes of action brought pursuant to the APA, while *Presbyterian Church* was valid where the case dealt with *non*-APA claims and waiver of sovereign immunity. 876 F.3d at 1171. In other words, for claims based solely upon the APA when a statute does not provide a private right of action, Section 704 (or 706, as the case may be) acts as a limitation on Section 702's waiver of sovereign immunity. *Gallo Cattle*, 159 F.3d at 1198 – 99. In contrast, for actions seeking nonmonetary relief against the government on constitutional or other grounds, neither Section 704 nor 706 limits Section 702's waiver of sovereign immunity. *Presbyterian Church*, 870 F.2d at 525.

*All.*, 542 U.S. at 61-62. It is under this framework that the Court must review Idaho's crossclaim pursuant to Fed. R. Civ. P. 12(b)(1).

## DISCUSSION

### 1.    Idaho Has Not Identified Agency Inaction

Although Idaho ostensibly challenges the Federal Defendants' 2003 decision to designate the Big Creek Four for emergency use only, Idaho disavows that it is challenging that decision under 5 U.S.C. § 704. Response at 13. (Dkt. 47.)[16] Instead, Idaho unequivocally asserts that it brings the three counts in its crossclaim pursuant to Section 706(1)[17] which, as discussed above, requires a challenge to agency inaction. *See S. Utah Wilderness All.*, 542 U.S. at 61–62.

With regard to Count I, Idaho makes several assertions: (1) the Forest Service's designation of the Big Creek Four for emergency use only violates a nondiscretionary duty to keep the airstrips open and serviceable, in contravention of the CIWA; (2) maintenance actions to preserve the airstrips' serviceability are nondiscretionary obligations under the CIWA; and, (3) to the extent that the emergency use designation of the Big Creek Four has caused a de facto closure of the airstrips, the Forest Service has a nondiscretionary obligation to obtain Idaho's concurrence under the CIWA. Crossclaim ¶¶ 212 – 220. Idaho seeks to compel agency action unlawfully withheld – specifically

---

[16] If Idaho had brought its claims under Section 704, they would be subject to the APA's six-year statute of limitations. Idaho was first aggrieved by the emergency use designation in 2003, prompting former Governor Andrus to object in 2004, and again in 2015, to the emergency use designation. (Dkt. 39-1, 39-2.) At the hearing, Idaho clarified that its claims are brought solely pursuant to Section 706(1).
[17] While Idaho made this abundantly clear at the hearing, the briefing left the Court struggling with Idaho's theory. Only one short paragraph in their brief was devoted to their theory of recovery under Section 706(1). (Dkt. 47 at 18.)

requesting a court order that the Forest Service maintain the airstrips consistent with the 2022 Management Plans, or obtain Idaho's concurrence in light of the alleged de facto closure with the emergency use designation.

First, there is no question that Federal Defendants must comply with the Wilderness Act, and in turn, with the CIWA. But Idaho fails to identify any mandate or binding regulation stating the Federal Defendants must perform a specific act. The CIWA requires that the Federal Defendants permit the landing of aircraft within the Frank Church Wilderness consistent with the use of the airstrips established prior to 1980, "subject to such restrictions as the Secretary deems desirable…." 16 U.S.C. § 1133(d)(1); Congr. Record, Vol. 126, Part 13, p. 17180 (June 26, 1980). It is clear the Federal Defendants retain discretion to manage the Big Creek Four by virtue of the unambiguous statutory language allowing for the imposition of restrictions deemed desirable, provided the airstrips are neither closed nor rendered unserviceable.[18] How the Forest Service carries out the CIWA's directive is not for the Court to determine. *S. Utah Wilderness All.*, 542 U.S. at 67. Nor does the Court have authority to order the Forest Service to comply with the CIWA in any particular manner. *See id.* at 66 (explaining the court lacks the power to enter general orders compelling compliance with broad statutory mandates).

Idaho next claims maintenance activities are nondiscretionary. But, all the CIWA requires is that no aircraft landing strip be permanently closed or rendered unserviceable for reasons other than extreme danger to aircraft, and not without Idaho's concurrence.

---

[18] Unserviceable is defined as "not suitable for use." *Unserviceable*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/unserviceable, archived at https://perma.cc/VEA8-VXKC.

Again, the CIWA does not require the Forest Service to take any particular action to accomplish that directive. A general deficiency, such as the failure to perform certain maintenance activities that Idaho deems necessary, "lack[s] the specificity requisite for agency action...." *Id.* at 66. Idaho has therefore not identified a specific action (i.e., rule, order, license, sanction, or other relief) that the Forest Service is required to take. Any maintenance activities the Forest Service does undertake are, by definition, "discretionary."

Idaho asserts that the emergency use designation has resulted in de facto closure of the Big Creek Four, requiring the Court to compel the Forest Service to obtain Idaho's written concurrence.[19] But the Court does not find that restriction of the Big Creek Four to emergency use results in permanent closure. The CIWA defines closure—it prohibits the Secretary from "permanently clos[ing]" or "render[ing] unserviceable" any aircraft landing strip. Closure, as commonly understood, means that a facility will entirely stop operating, while unserviceable means not suitable for use.[20] The Forest Service previously recognized that permanent closure would require written concurrence from the State of Idaho, which Idaho had (and has) not given. 2003 ROD at 13. Consequently,

---

[19] Idaho also raised the argument that the Federal Defendants have violated the CIWA in its objection to the settlement agreement, asserting: (1) an emergency use designation results in de facto closure without Idaho's concurrence, in violation of the CIWA; (2) the CIWA does not authorize the Forest Service to create a new classification of airstrips limited for emergency use only; and, (3) emergency use is not a use recognized by the Federal Aviation Administration.

[20] *Closure,* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/closure, archived at https://perma.cc/Y5NP-7W7V. *See also* n.18.

MEMORANDUM DECISION AND ORDER - 21

given their topography and condition,[21] the Forest Service determined that the Big Creek Four would be limited to emergency use, and such restriction would apply to both commercial and noncommercial aviators. 2003 ROD at 13.[22] Idaho has not explained how discretionary maintenance of the Big Creek Four to facilitate use of the airstrips in an emergency, including by private aviators, is commensurate with permanent closure, or causes the airstrips to be unsuitable for any use.

Idaho argues also that the Forest Service's emergency use designation is a closure designation under applicable FAA regulations. But the Court fails to recognize the application of these regulations. FAA Pilot/Controller Glossary at PCG O-3, https://www.faa.gov/air_traffic/publications/media/PCG_10-12-17.pdf, *archived at* https://perma.cc/72R2-HQSH.[23] The glossary bears a date of 2017, and is not referenced in the CIWA, which was enacted in 1980. Furthermore, the 2003 ROD indicates that the Forest Service notified the Idaho Division of Aeronautics and the Federal Aviation Administration of the emergency use status of the Big Creek Four; if the FAA intended for the glossary to override the 2003/2009 Plan, Idaho has not provided any controlling

---

[21] The Forest Service noted that the Big Creek Four were "previously abandoned." 2003/2009 Plan, Ch. 2, p. 11. The Forest Service also indicated the four airstrips would not be included on wilderness maps, as there were other designated public use airstrips within the wilderness area for non-emergency aircraft landings. *Id.* at 2-12. In 1980, Idaho recognized nine airstrips as public use airstrips, and they were listed in the State of Idaho Airport Facilities Directory. *Id.* at 2-8. In addition, there are 18 landing strips designated as private use facilities; the Forest Service operates one of the private facilities for public use. *Id.*

[22] The 2003 ROD therefore directly contradicts Idaho's assertion that the emergency use only designation applied to Forest Service aircraft, but not to commercial or other private aircraft. It was expressly noted in the 2003 ROD that aviators wanted the four airstrips to be maintained for public use rather than for emergency use only, a tacit recognition that they were *not* previously maintained for public use. 2003 ROD at 8.

[23] The glossary defines "out of service" as when a facility or service is "not operational, certified (if required) and immediately 'available' for Air Traffic or public use."

authority. Nor has Idaho pointed to any authority that the FAA Pilot/Controller Glossary has the force of law. Rather, the glossary was compiled to promote a "common understanding of the terms used in the Air Traffic Control System." Finally, Idaho has not sufficiently explained how an "emergency use" designation equates to closure or "out of service." The public can continue to use the Big Creek Four, provided the need to do so is emergent.

Turning to Idaho's two other counts in their crossclaim, the Court first observes that Idaho failed to defend either its NEPA claim or its NFMA claim from dismissal in its briefing, nor did it articulate its position during the hearing. Response at 18 – 20 (Dkt. 47) (failing to mention NEPA or NFMA). Second, Idaho's NEPA and NFMA claims largely mirror its claims under the CIWA, and again fail to articulate a nondiscretionary duty the Federal Defendants must undertake related to the maintenance of the Big Creek Four.

For instance, Idaho contends that maintenance actions to support the serviceability of the Big Creek Four are nondiscretionary actions exempt from NEPA review. Alternatively, Idaho insists the Federal Defendants have failed to issue a categorical exclusion consistent with its nondiscretionary obligation under the CIWA to maintain the Big Creek Four. Idaho is correct that NEPA exempts nondiscretionary actions from NEPA review. *See* 40 C.F.R. § 1501.3(a)(5) (requiring an agency to determine whether "the proposed activity or decision is a non-discretionary action with respect to which such agency does not have authority to take environmental factors into consideration in

determining whether to take the proposed action." [24] But, as discussed above, the Court finds that the CIWA contains an express grant of discretionary authority with regard to CIWA's implementation, and the actions required to maintain serviceability of the Big Creek Four for emergency use.

Idaho's NFMA claim seeks declaratory relief upholding the 2022 Management Plans as mandatory, nondiscretionary actions to implement the 2003/2009 Plan. But. the Forest Service's management of the Big Creek Four has changed over time, again reflecting the discretionary authority granted to the agency by the Wilderness Act and by the CIWA. For instance, the Forest Service's decision reflected in the 2003 ROD constituted a change in management direction, because previously the Forest Service did not provide any maintenance of the Big Creek Four. ROD at 8 ("Consistent with the current plan, the Forest Service has done very little maintenance" on the Big Creek Four.). In that regard, the 2003/2009 Plan improved existing conditions. *See* ROD at 13 ("Aviators believe that the landing strips are not adequately maintained by the Forest Service to provide for landings under emergency conditions.").

Management direction was altered again in 2018 and in 2022, with the publication of the 2018 Regional Forester's Statement and the 2022 Management Plans. Nonetheless, the Forest Service reiterated that, in each instance, the agency's actions were consistent with the emergency use designation set forth in the 2003/2009 Plan. (Dkt. 54-1 at 2; 54-2 at 2; 54-3 at 2; 54-4 at 2; 54-5 at 2.) Indeed, the 2022 Management Plans were each titled,

---

[24] In its Crossclaim, Idaho cites 40 C.F.R. § 1501.1(a)(5). Crossclaim ¶ 214. (Dkt. 39.) There is no such regulation. Section 1501.1 contains subparagraphs (a) – (e), and sets forth the purpose of NEPA.

"Emergency Use Airstrip Management Plan." The fact the Forest Service desires to change course vis-à-vis the settlement agreement is therefore consistent with the discretionary authority granted to the agency by the CIWA, and by the 2003/2009 Plan.[25] Further, it reinforces the conclusion that the 2022 Management Plans were discretionary, not mandatory, actions.

The Court finds Idaho has failed to allege discrete agency action unlawfully withheld or delayed. Without a clear, mandatory duty that the Forest Service is required to perform, the Court has no jurisdiction over Idaho's APA claims, and will dismiss all three counts in the crossclaim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Court declines to address the Federal Defendants' alternative arguments in favor of dismissal.

## 2.    The Settlement Agreement

Plaintiffs and the Federal Defendants have agreed to settle their dispute, with the Forest Service agreeing to issue a statement superseding the 2018 Regional Forester's Statement, and reiterating that the Big Creek Four are for "emergency use only and are not managed as public landing areas under the current Frank Church-River of No Return Wilderness Management Plan." (Dkt. 45-1.) In addition, the Payette National Forest will issue a public notice on its website "informing the public that the Big Creek Four are for

---

[25] It was clear at the hearing that Idaho objected mainly to the Federal Defendants' commitment in the settlement agreement to *enforcement* of the emergency use only designation of the Big Creek Four. The Court observes that comments received from private aviators indicated they wanted the Big Creek Four to be maintained for public use rather than for emergency use only, a tacit admission that the airstrips had not been maintained previously for public use at any time prior to 2003. *See* n.9. That the Federal Defendants may have declined to issue citations or otherwise enforce the emergency use only designation does not change the fact that, since 2003, the public has been expressly informed of the emergency use restriction imposed upon landings at the Big Creek Four.

emergency use only and are not managed as public use landing areas under the current Management Plan." (Dkt. 45-1.) Plaintiffs and Federal Defendants have asked for a consent judgment, which would trigger the effective date of the settlement agreement.[26]

Because of the unique aspects of settlements, the Court should enter a proposed consent judgment if the Court decides that it is fair, reasonable and equitable and does not violate the law or public policy. *Sierra Club, Inc. v. Elec. Controls Design, Inc*., 909 F.2d 1350, 1355 (9th Cir. 1990). As long as the consent decree comes "'within the general scope of the case made by the pleadings,'" furthers "the objectives upon which the law is based," and does not "violate[ ] the statute upon which the complaint was based," the parties' agreement may be entered as a judgment by the Court. *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 – 26 (1986) (quoting *Pacific R. Co. v. Ketchum*, 101 U.S. 289, 297 (1880) (citations omitted)).

Here, the Court finds the settlement agreement is fair, reasonable, and equitable, and does not violate the law or public policy. Its terms are consistent with the discretionary authority granted by the CIWA, and with the 2003/2009 Plan, as explained above. Moreover, the Federal Defendants have designated the Big Creek Four for emergency use only since 2003; the proposed settlement agreement does not change that designation, nor does it supersede the maintenance objectives set forth in the 2003/2009

---

[26] Idaho has objected to the settlement agreement. Despite concluding the crossclaim is subject to dismissal, Idaho, as an intervenor, may maintain an objection to the settlement agreement. *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (finding intervention appropriate when intervenors alleged that the parties' proposed settlement agreement was contrary to their interests).

Plan. Rather, the settlement agreement changes the way the Forest Service will effectuate that designation.

The Federal Defendants requested that the Court retain jurisdiction for a period of five years "if necessary, to enforce the terms of the Settlement Agreement."[27] In the exercise of its discretion, the Court will retain jurisdiction consistent with *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). *See also* Fed. R. Civ. P. 41(a)(2) (providing that the Court may dismiss an action "upon such terms and conditions as the court deems proper.").

## CONCLUSION

Idaho has not challenged a nondiscretionary, mandatory agency action that the Federal Defendants are required to take under 5 U.S.C. § 706(1). The Court therefore lacks subject matter jurisdiction over Idaho's crossclaim. The Court will also grant the parties' motion to dismiss Plaintiffs' complaint, and enter a judgment consistent with this memorandum decision.

---

[27] The parties explained that, in the absence of court retention of jurisdiction for the proposed 5-year period, Plaintiffs must file suit for a breach of the agreement in the Court of Claims, as the Court would lack jurisdiction over such a claim. Further, the Court of Claims would limit the remedy to monetary damages, which would not adequately allow Plaintiffs to enforce the agreement.

**MEMORANDUM DECISION AND ORDER  - 27**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Joint Motion to Dismiss Plaintiffs' Complaint  (Dkt. 45) is **GRANTED**.

2)      Motion to Dismiss State of Idaho's Crossclaim (Dkt. 46) is **GRANTED**.

Dated: **December 10, 2024**

Candy W. Dale
United States Magistrate Judge